In re:  DAIMLERCHRYSLER AG SECURITIES LITIGATION.

Tracinda Corporation, a Nevada Corporation, Plaintiff,

v.

DaimlerChrysler AG, a Federal Republic of Germany corporation;  Daimler–Benz AG, a Federal Republic of Germany corporation;  Juergen Schrempp, a citizen of the Federal Republic of Germany;  Manfred Gentz, a citizen of the Federal Republic of Germany;  Hilmar Kopper, a citizen of the Federal Republic of Germany, Defendants.

Glickenhaus & Co., et al., Plaintiffs,

v.

DaimlerChrysler AG, et al., Defendants;

Nos.  CIV.A.00–993, CIV.A.00–984, CIV.A.01–004–JJF.

United States District Court, D. Delaware.

March 5, 2003.

Carmella P. Keener, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, Lowey, Dannenberg, Bemporad & Selinger, P.C., White Plains, NY (Richard Bemporad, Thomas M. Skelton, of Counsel), for Glickenhaus Plaintiffs.

A. Glichrist Sparks, III, Alan J. Stone, Jessica Zeldin, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, CA (Terry Christensen, Mark G. Krum, of Counsel), Douglas H. Flaum, Julie E. Kamps, Midwin Charles, Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for Plaintiff Tracinda Corporation.

Jay W. Eisenhofer, Abott A. Leban, Richard M. Donaldson, Grant & Eisenhofer, P.A., Wilmington, Entwistle & Cappuc-

ci LLP, New York, NY (Vincent R. Cappucci, Stephen D. Oestreich, Johnston de F. Whitman, Jr., of counsel), Jeffrey A. Klafter, Paul Ryan, Bernstein Litowitz Berger & Grossmann LLP, New York, NY, Jeffrey W. Golan, Jeffrey A. Barrack, David E. Robinson, Barrack Rodos & Bacine, Philadelphia, PA, for Co–Lead Plaintiffs, The Florida State Board of Administration, Municipal Employees Annuity and Benefit Fund of Chicago, Denver Employees Retirement Plan, Policemen's Annuity and Benefit Fund of Chicago, and Municipal Employees Annuity and Benefit Fund of Chicago.

Thomas J. Allingham II, Robert S. Saunders, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY (Jonathan J. Lerner, Lea Haber Kuck, Joseph N. Sacca, of counsel), for Defendants DaimlerChryler AG, Daimler–Benz AG, Jürgen Schrempp and Manfred Gentz.

Michael D. Goldman, Peter J. Walsh, Jr., Kevin R. Shannon, Richard R. Renck, Potter Anderson & Corroon LLP, Wilmington, DE, Milbank, Tweed, Hadley & Mccloy LLP, New York, NY (Jeffrey Barist, Douglas W. Henkin, Timothy P. Wei, Joshua K. Porter, of counsel), for Defendant Hilmar Kopper.

## OPINION

FARNAN, District Judge.

Pending before the Court is a Renewed Motion To Dismiss (D.I.253)[1] filed by Defendant Hilmar Kopper. By his Motion, Defendant Kopper seeks to dismiss (1) the Complaint in *Tracinda Corp. v. Daimler-Chrysler AG et al.*, Civil Action No. 00–984–JJF; (2) the Amended Complaint in *Glickenhaus & Co., et al. v. DaimlerChrys-*ler AG, et al., Civil Action No. 01–004–JJF; and (3) the Second Amended Consolidated Class Action Complaint in *In re DaimlerChrysler Securities Litigation,* Master Docket No. 00–993–JJF (collectively "the Complaints"), for lack of personal jurisdiction and failure to state control person claims against Defendant Kopper. For the reasons set forth below, the Court will grant Defendant Kopper's Motion To Dismiss on the grounds that the Court lacks personal jurisdiction over Defendant Kopper.

## BACKGROUND

The background relevant to this action has been set forth fully in the Court's previous Opinions in this matter granting in part and denying in part Defendant Kopper's Motion To Dismiss with leave to renew upon the completion of jurisdictional discovery, *In re: DaimlerChrysler AG Sec. Litig.,* 197 F.Supp.2d 86 (D.Del.2002) ("*Kopper I*"), and granting and denying in part the DaimlerChrysler Defendants' Motion To Dismiss the Complaints, *In re: DaimlerChrysler AG Sec. Litig.,* 197 F.Supp.2d 42 (D.Del.2002).

In *Kopper I*, the Court concluded that it could not assert general jurisdiction over Defendant Kopper. With regard to the exercise of specific jurisdiction, the Court found that Plaintiffs alleged a colorable basis for jurisdiction so as to permit limited jurisdictional discovery. Limited jurisdictional discovery was conducted within the parameters set by the Court, and Defendant Kopper renewed his previously filed Motion To Dismiss. Briefing on the Renewed Motion To Dismiss has been completed, and therefore, this matter is ripe for the Court's review.

---

1. The three cases referenced by Defendant Kopper have been consolidated into Civil Action No. 00–993–JJF. Accordingly, the Docket Numbers referenced in this Opinion correspond to the docket items listed on the consolidated docket in Civil Action No. 00–993–JJF, unless otherwise indicated.

## DISCUSSION

By his Motion To Dismiss, Defendant Kopper raises two arguments. Specifically, Defendant Kopper contends that (1) Plaintiffs' Complaints should be dismissed for lack of personal jurisdiction; and (2) the control person claims against Defendant Kopper should be dismissed for failure to allege the elements of control person liability and failure to plead with the requisite specificity. Because the Court concludes that it lacks jurisdiction over Defendant Kopper, the Court will limit its analysis to the personal jurisdiction question.

### I. Legal Standard For The Exercise Of Personal Jurisdiction

█ Personal jurisdiction for claims brought under the Securities Exchange Act of 1934 (the "Exchange Act") and Section 22 of the Securities Act of 1933 (the "Securities Act") is permitted to the full extent permitted by the Due Process Clause of the Fifth Amendment. *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir.1990); *FS Photo, Inc. v. PictureVision, Inc.*, 48 F.Supp.2d 442, 445 (D.Del.1999); *SEC v. The Infinity Group Co.*, 27 F.Supp.2d 559, 563 (E.D.Pa.1998). Where, as here, jurisdiction is based on a statute that provides for nationwide service of process, two components must be established to satisfy the jurisdictional requirements of the Due Process Clause: (1) the defendant must have "minimum contacts" with the United States as a whole, and (2) the exercise of jurisdiction over the defendant must be "reasonable." *SEC v. Euro Security Fund, Coim SA*, 1999 WL 76801 (S.D.N.Y. Feb.17, 1999); *The Infinity Group Co.*, 27 F.Supp.2d at 563.

Because specific jurisdiction is at issue in this case, the Court's minimum contacts inquiry must focus on the question of (1) whether the defendant has purposefully directed his activities toward the forum, and (2) whether the litigation arises out of or is related to the defendant's contacts with the forum. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567–568 (2d Cir.1996) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–416 & nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

█ Once it has been established that a defendant had sufficient minimum contacts with the forum, the Court must then determine whether it would be reasonable for the Court to exercise jurisdiction over the defendant. In making this determination, courts weigh several factors, including:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metropolitan Life Ins.*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

█ After limited jurisdictional discovery has been taken, the plaintiff may not rest on the allegations of its complaint. Rather, the plaintiff bears the burden of presenting a prima facie case of personal jurisdiction using sworn affidavits or other competent evidence to establish the requisite jurisdictional facts. *Joint Stock Society v. Heublein, Inc.*, 936 F.Supp. 177, 192 (D.Del.1996). Stated another way, the prima facie showing of personal jurisdiction over the defendant must be grounded "on evidence of specific facts set out in the record." *Id.* (citations omitted). In evaluating this evidence, the Court must accept the plaintiff's proffered evidence as true and resolve all factual disputes and draw

all reasonable inferences in favor of the plaintiff. *Id.* at 192–193.

If the plaintiff presents sufficient evidence to establish a prima facie case that the exercise of personal jurisdiction is appropriate, the Court may either order an evidentiary hearing or deny the motion to dismiss. *Id.* at 193. If the motion to dismiss is denied, the defendant may raise the issue of jurisdiction at a subsequent stage of the litigation. Eventually, the plaintiff must establish by a preponderance of the evidence, at a pretrial hearing or at trial, that the exercise of personal jurisdiction is appropriate. *Id.*

## II. Whether Plaintiffs' Complaints Should Be Dismissed For Lack Of Personal Jurisdiction

By his Motion, Defendant Kopper contends that Plaintiffs' jurisdictional discovery has failed to establish any evidence supporting the exercise ·of personal jurisdiction over Defendant Kopper. Specifically, Defendant Kopper contends that Plaintiffs have failed to proffer any evidence establishing the minimum contacts requirement of personal jurisdiction, and the exercise of personal jurisdiction over Defendant Kopper would be unreasonable. Accordingly, Defendant Kopper requests the Court to dismiss Plaintiffs' Complaints pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

### A. *Whether Plaintiffs Have Established A Prima Facie Case In Favor Of Exercising Personal Jurisdiction Over Defendant Kopper*

█ In its previous Opinion, the Court identified five sets of allegations made by Plaintiffs which, if supported by sufficient evidence after limited discovery, would give rise to a prima facie showing of personal jurisdiction over Defendant Kopper. These allegations are as follows: (1) Defendant Kopper allegedly played an instru-

mental role in negotiating and structuring the merger, advised Mr. Schrempp how to structure the merger and conduct negotiations and was involved in all material decisions regarding the merger; (2) Defendant Kopper allegedly approved the terms and structure of the merger; (3) Defendant Kopper allegedly participated in the dissemination of false and misleading representations directed at shareholders in the United States; (4) Defendant Kopper was allegedly involved in the preparation, approval and filing of a false and misleading SEC Registration Statement and the Proxy/Prospectus; and (5) Defendant Kopper was allegedly present at post-merger meetings in the United States. *Kopper I,* 197 F.Supp.2d at 95–96. The Court will review the evidence proffered by Plaintiffs in support of personal jurisdiction in light of these allegations to determine whether Plaintiffs have established a prima facie case that Defendant Kopper purposefully directed his activities toward the United States and that Defendant Kopper's conduct was related to Plaintiffs' claims in this litigation.

1. Whether Defendant Kopper had direct contacts with the United States sufficient to establish the requisite minimum contacts with the United States to support the exercise of specific jurisdiction

Plaintiffs maintain that Defendant Kopper had extensive direct contacts with the United States related to the merger such that he purposefully directed his activities toward the United States. Plaintiffs also maintain that Defendant Kopper's direct contacts with the United States are related to the claims of this litigation. Specifically, Plaintiffs direct the Court to (1) Defendant Kopper's pre-merger and post-merger attendance at several meetings in the United States, (2) a May 6, 1998 letter sent by Defendant Kopper to Mr. Eaton, and (3) Defendant Kopper's alleged approval of

two press releases related to the merger. The Court will review each of the contacts alleged by Plaintiffs in support of their personal jurisdiction argument.

### a. Defendant Kopper's attendance at pre-merger meetings

Plaintiffs contend that Defendant Kopper attended two meetings in the United States prior to the merger which are sufficient to support a prima facie case of personal jurisdiction over Defendant Kopper. Plaintiffs allege that on August 3, 1998, Defendant Kopper met with Messrs. Schrempp and Eaton in New York to discuss and finalize membership of both the Management and Supervisory Boards. In addition, Plaintiffs allege that Defendant Kopper attended a meeting on November 1, 1998 in Auburn Hills, Michigan of the Nomination and Compensation Committee where decisions on the organization structure were finalized. Plaintiffs contend that both of these meetings supports their allegations that Defendant Kopper negotiated and approved the terms of the merger. Plaintiffs further contend that the August 3, 1998 meeting supports their allegation that Defendant Kopper was involved in the filing of a false and misleading Proxy/Prospectus, because he knew the information discussed at this meeting would be included in the Proxy/Prospectus. (D.I. 275 at 23; D.I. 282 at 14–15, 30).

After reviewing Plaintiffs' allegations in light of the evidence proffered in support of those allegations, the Court concludes that Plaintiffs have not established the requisite nexus between Defendant Kopper's conduct and the claims of this litigation to support the exercise of specific personal jurisdiction. With regard to the August 3, 1998 meeting in New York, Plaintiffs claim the meeting was conducted to finalize membership of the Management and Supervisory Boards for inclusion in the final Proxy/Prospectus. However,

Plaintiffs allegation is not supported by the evidence they proffer regarding this meeting. The Proxy/Prospectus contains no discussion of the membership of the DaimlerChrysler Supervisory Board other than the fact that Defendant Kopper was a member of the Board, (Henkin Reply Decl., Ex. 3), and the evidence suggests that members of the DaimlerChrysler committees continued to change after the Proxy/Prospectus was filed. (Kamps Decl. Ex. E at DCX 1591).

Further, the evidence proffered by Plaintiffs does not support their allegation that final decisions were made at this meeting. Rather, Defendant Kopper testified only that "potential members" of the two boards were discussed and that he and Messrs. Eaton and Shrempp were "in agreement as to the most likely people to be put on each Board." (Kamps Decl., Exh. A (Dep. Tr. 138:15–18)). In fact, Defendant Kopper testified that the meeting was "informal," no minutes were kept, and that he needed to subsequently check out the names raised at this meeting, which further suggests that the discussions did not culminate in final decisions as Plaintiffs contend. (Henkin Reply Decl., Ex. 1, Tr. 138:23–25; 140:18–23). That the composition of the Boards continued to change after the meeting also suggests that the meeting did not result in final decisions, but that the parties continued to review and change their thoughts. (Kamps Decl. Ex. E at DCX 1591). Where, as here, the evidence is insufficient to show that any final decisions regarding the merger were made at this meeting, the Court concludes that the connection between this meeting and the Plaintiffs' claims is too tenuous to support the exercise of personal jurisdiction. *See Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 1000 (2d Cir.1975) (holding that in-forum meeting was insufficient to establish connection between meeting and claimed injury to American residents where structure of

new corporate vehicle and dividend policy were discussed generally, but no final decisions were made).

Further, in the Court's view, Plaintiffs have not established how this meeting relates to their claims that Defendant Kopper participated in or approved of the structuring of the merger or participated in disseminating a false Proxy/Prospectus. This meeting was conducted in August, well after the Amended and Restated Business Combination Agreement (the "Business Combination Agreement") was signed [2], and the Proxy/Prospectus did not reflect the information allegedly finalized at this meeting. Because Plaintiffs cannot establish that Defendant Kopper's participation in this meeting was related to the claims of this litigation, the Court finds the meeting insufficient to support jurisdiction over Defendant Kopper.

Similarly, with regard to the November 1, 1998 meeting, the Court concludes that the evidence proffered by Plaintiffs does not support their allegation that Defendant Kopper negotiated and/or approved the terms of the merger. Plaintiffs direct the Court to Annex 1 of the minutes of the November 4, 1998 Supervisory Board meeting; however, that Annex merely states that members of the future Management Board of DaimlerChrysler met and made decisions on the organization structure and top level management appointments. (Kamps Decl., Ex. E (DCX 25)). The Annex does not reveal Defendant Kopper's role, if any, in reaching these decisions. Plaintiffs also direct the Court to an August 12, 1998 memo from W.J. O'Brien to R.E. Allen and R.J. Lanigan and copied to R.J. Eaton, G.R. Thoman and G.C. Valade indicating that a meeting of the "Shadow" Compensation Committee of DaimlerChrysler would take place on September 2 in Frankfurt Germany. (Kamps Decl., Ex. E (DCX 1706)). Although the memo indicates that Defendant Kopper would be in attendance at this meeting, it is unclear to the Court how this relates to the November meeting in Michigan. Further, even if the meeting referenced in the memo ultimately took place in Michigan instead of Frankfurt, the memo does nothing to advance Plaintiffs' claim that Defendant Kopper participated in the negotiations related to the merger.[3] Plaintiffs also cite to meeting minutes indicating that compensation and payroll decisions were made during the course of the meeting. However, these documents do

---

2. The Business Combination Agreement was signed in May 1998. Defendant Kopper testified at his deposition that he never reviewed the Business Combination Agreement, and was not involved in negotiating the details of the merger. He further testified that he was updated in general terms regarding the progress of the negotiations and that he was most interested in price, because it was his responsibility to ensure that the deal was fair for Daimler–Benz Shareholders. (Henkin Reply Decl., Ex. 1 (Tr. at 46–47, 50–51, 150–151)). In the Court's view, Plaintiffs have not offered any evidence to rebut Defendant Kopper's assertions or create a factual dispute, and Plaintiffs only grounds for its assetion that Defendant Kopper's role was more extensive is based on innuendo and speculation, rather than facts and reasonable factual inferences from the record.

3. Lead Plaintiffs direct the Court to several other documents which the Court finds insufficient to support their allegations. For example, DCX 1704 and DCX 1590 are memos similar in form and substance to the August 18 memo discussed above. As such, they provide no insight into Defendant Kopper's role in any decisions purportedly reached at the November meeting in Auburn Hills. In addition, Lead Plaintiffs cite to DCX 46222–46223 for the proposition that Defendant Kopper helped create the Committee's compensation plan and that other related compensation and payroll issues were discussed at the meeting. This document is an untranslated German newspaper article, and therefore, the Court finds it unhelpful to its analysis.

not advance Plaintiffs' claim, because they do not discuss Defendant Kopper's role, if any, in these decisions. (Donaldson Decl. Ex. 27 (DCX 1707–1709)).[4] In addition, Plaintiffs have not established how the November 1 meeting relates to their claims that Defendant Kopper participated in structuring or negotiating the merger, because this meeting was also conducted after the Business Combination Agreement was signed. Accordingly, the Court finds Defendant Kopper's attendance at this meeting is insufficient to support the exercise of personal jurisdiction over Defendant Kopper.

b. Defendant Kopper's attendance at post-merger meetings

As for post-merger meetings in the United States, Plaintiffs direct the Court to Defendant Kopper's attendance at several meetings including a July 27–28, 1999 meeting of the Audit Committee in New York; a September 9–10, 1999 meeting of the Shareholder Committee in New York; a March 6, 2000 meeting with Mr. Holden in Auburn Hills; a June 6, 2000 meeting of the Shareholder Committee in New York; a September 6–7, 2000 meeting of the Sub–Committee on Corporate Governance in New York; and an October 4–5, 2000 meeting of the Shareholder and Supervisory Board Committee in Auburn Hills. Plaintiffs allege that Defendant Kopper "continued to implement Defendants' secret plan to control DaimlerChrysler" at these meetings and that Defendant Kopper played a role in firing key Chrysler executives at these meetings. (D.I. 275 at 23–24; D.I. 282 at 18–24, 30).

In *Kopper I*, the Court concluded that post-transaction contacts may not be considered in determining whether specific jurisdiction exists. In this case, however, Defendant Kopper's post-jurisdiction contacts relate to Plaintiffs' allegation that Defendants' scheme to control Daimler-Chrysler continued post-merger with the firing of key Chrysler executives.

After reviewing these post-merger contacts and the proffered evidence in support of them, the Court concludes that they are insufficient to support the exercise of personal jurisdiction over Defendant Kopper. With the exception of the October 5, 2000 meeting, Plaintiffs fail to establish any connection between the remaining meetings and their claims of securities violations and fraud against Defendant Kopper. *Kopper I*, 197 F.Supp.2d at 96 ("requiring Plaintiffs to connect Defendant Kopper's post-merger visits [to the United States] with the events giving rise to the litigation"). Indeed, the documents Plaintiffs proffer in regard to these meetings are calendar pages kept by Defendant Kopper's secretary showing that the meetings were scheduled.[5] (Kamps Decl., Ex. D,

4. Lead Plaintiffs also cite to the minutes of the November 4, 1998 meeting of the Daimler–Benz Supervisory Board. Plaintiffs contend that Defendant Kopper gave a "detailed explanation of the transition plan incident to the Merger" at this meeting. After reviewing these minutes, the Court finds that they also offer little by way of support for Plaintiffs' allegations that Defendant Kopper negotiated or approved the terms of the merger. First, the minutes show that Mr. Schrempp, and not Defendant Kopper, gave a detailed explanation of the transition plan incident to the merger. (Donaldson Decl. Ex. 29 (DCX 23–25)). Second, to the extent that Defendant Kopper's comments were recorded in the minutes, his statements were general remarks about the technical aspects of the merger. (Donaldson Decl. Ex. 29 (DCX 9, 15)). As such, the Court finds these documents insufficient to support Plaintiffs' allegations about Defendant Kopper's role in the merger.

5. In discussing these meetings, Plaintiffs also direct the Court to other meetings which were conducted in Germany. The Court is not persuaded that these meetings satisfy the effects test. *See* infra Section II.A.2 of this Opinion. In addition, the Court finds that Plaintiffs' evidence regarding these meetings

(KOPPER 2474–2475, 2477–2478, 2488, 2491, 2496–2497, 2498–2499)). As such, these documents do not support Plaintiffs' allegation that Defendant Kopper participated in the alleged fraudulent scheme to fire key Chrysler executives and defraud Chrysler shareholders.

To the extent that Plaintiffs contend that Defendant Kopper approved and implemented the termination of every person who left the Management Board by signing all the termination agreements, the Court likewise finds Plaintiffs' allegation of Defendant Kopper's involvement insufficient to support personal jurisdiction. The Court is not persuaded that Plaintiffs' evidence establishes, by reasonable inference or otherwise, that Defendant Kopper played some individual role in approving the alleged firings. Rather, Plaintiffs' evidence shows that Defendant Kopper participated in these matters in his capacity as a member and Chair of the Supervisory Board.

Plaintiffs do not dispute that Defendant Kopper acted in his capacity as the Chairman of the Supervisory Board when he acted in regard to the termination or resignations of former Chrysler executives. However, Plaintiffs cite to *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) for the proposition that an individual cannot be shielded from personal jurisdiction merely because that individual acted in a fiduciary capacity on behalf of a corporation.[6] With regard to *Calder*, Plaintiffs' statement is correct, but it oversimplifies the *Calder* court's holding. In *Calder*, the Supreme Court explained that each defendant's contacts with the forum must be assessed individually. 465 U.S. at 790, 104 S.Ct. 1482. Courts applying *Calder* have concluded that where a board member's only contact with the forum has been in the scope of his corporate capacity, the individual's contact is insufficient to support the exercise of personal jurisdiction.[7] *See e.g. Mates v. North Am. Vaccine, Inc.*, 53 F.Supp.2d 814, 821 (D.Md.1999) (holding that board member could not be subject to the court's jurisdiction where contact with the forum was "entirely within the scope of his corporate capacity"); *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F.Supp.2d 47, 51 (D.D.C.1998) ("Although plaintiff has proffered evidence that [the individual defendant] traveled to the District, engaged in contract negotiations in the District, and ultimately signed [the] contract [at issue] with a substantial connection to the District, all these activities were apparently carried out on behalf of the [corporate] defendant and cannot sustain personal jur-

---

is insufficient to show that they are related to their claims against Defendant Kopper. For example, Plaintiffs direct the Court to a meeting agenda identifying Defendant Kopper as the speaker on the slated issue regarding the early departure of Mr. Holden from the Management Board. In the Court's view, however, the fact that Defendant Kopper was going to introduce the topic does not support Plaintiffs' position that Defendant Kopper played a role in the alleged firing of Mr. Holden.

**6.** In *Keeton*, the Court reiterated the position it stated in *Calder*. However, the *Keeton* court expressly declined to address the question of whether personal jurisdiction existed

over individual employees of the defendant corporation. 465 U.S. at 781, n. 13, 104 S.Ct. 1473.

**7.** *See also In re Baan Co. Sec. Litig.*, 2002 WL 1284295 (D.D.C. June 10, 2002) (holding that "personal jurisdiction can only be based on [individual defendant's] personal activities in the United States and not on the activities he performed here in service to [the corporate defendant]."); *Bowers v. NETI Tech., Inc.*, 690 F.Supp. 349, 357 (E.D.Pa.1988) ("Individuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts.").

isdiction."). As the Court has stated, Plaintiffs' evidence shows that Defendant Kopper participated in these matters in his corporate capacity. Plaintiffs have not proffered any evidence that Defendant Kopper acted in an individual capacity and/or availed himself as an individual of the privileges of the United States, and in the Court's view, Plaintiffs' attempt to suggest otherwise are beyond the actual evidence and any reasonable inferences to be drawn therefrom.

As for the October 5, 2000 meeting, Plaintiffs contend that Gale, a key Chrysler executive, announced his resignation. Plaintiffs attempt to connect Defendant Kopper to that decision by directing the Court to Defendant Kopper's deposition testimony that he had discussed Gale's "retirement" many times prior to the declaration of Gale's withdrawal from the Board. (Kamps Decl., Exh. A (Dep. Tr. 192:19–21)).

In response to this allegation, Defendant Kopper maintains that he played no role in initiating or pressing for these changes. According to Defendant Kopper, he participated in these meetings in his capacity as chairman of the DaimlerChrysler Supervisory Board and that his role was limited to chairing several meetings at which the Supervisory Board or a committee of the Supervisory Board "virtually unanimously and with the support of the Chrysler designates" accepted the resignation of various members of the DaimlerChrysler Management Board. (D.I. 254 at 15). Thus, Defendant Kopper maintains that no evidence exists to support Plaintiffs' allegations that Defendant Kopper proposed or advocated these resignations. To the contrary, Defendant Kopper presents evidence establishing that many of the key Chrysler executives, including Mr. Gale, resigned for personal reasons and/or at the suggestion of other individuals like Mr. Eaton or Mr. Holden. (Kamps. Decl., Ex. D, (KOPPER 1843); Henkin Reply Decl., Ex. 1, (Tr. 166–168, 171–174), Ex. 9 at 7–9, Ex. 17 at 23, Ex. 10 at 18).

It is true, as Plaintiffs contend, that after limited discovery related to personal jurisdiction, the Court is required to accept Plaintiffs' well-pled, factually supported allegations as true and resolve all factual disputes in favor of Plaintiffs. In the Court's view, however, the record on this issue does not present a dispute of fact. Plaintiffs have not come forward with evidence rebutting Defendant Kopper's position that his role was limited and that these key Chrysler executives resigned on their own accord. Rather, Plaintiffs attempt to create a factual issue with innuendo and bare allegations concerning Defendant Kopper's involvement. Because Plaintiffs' allegations are not supported by evidence, they do not give rise to a factual dispute which should be resolved in Plaintiffs' favor. Indeed, Defendant Kopper's testimony that he discussed Gale's retirement does not indicate what, if any, view he had regarding the retirement, and it certainly does not indicate that Defendant Kopper advocated or prompted the resignation. Accordingly, the Court concludes that Plaintiffs have not proffered any evidence beyond the bare allegations of their Complaint that Defendant Kopper had any role in the firing of certain key Chrysler executives. Thus, the Court finds that Plaintiffs have failed to create a nexus between Defendant Kopper's participation in these post-merger meetings and their claims in this litigation, and therefore, the Court concludes that Defendant Kopper's post-merger meetings in the United States are insufficient to establish specific personal jurisdiction over Defendant Kopper.[8]

---

**8.** The Tracinda and Glickenhaus Plaintiffs suggest that Defendant Kopper's mere attendance at meetings in the United States is suffi-

c. Defendant Kopper's May 6, 1998 letter

With regard to the May 6, 1998 letter from Defendant Kopper to Mr. Eaton, Plaintiffs contend that this letter is a direct contact by Defendant Kopper with the United States relating to Defendant Kopper's alleged role in the preparation, approval and filing of false and misleading information with the SEC. Specifically, Plaintiffs contend that Defendant Kopper's letter shows that he "reviewed and approved the 'merger of equals' before the documents containing these misrepresentations were filed with the SEC" (D.I. 275 at 30), and that he "intended that his representations to [Mr.] Eaton reach the United States, and knew that they would." (D.I. 275 at 25).

In the Court's view, the May 6, 1998 letter does not support Plaintiffs' assertions. First, the May 6 letter was hand delivered to Mr. Eaton in Germany, even though it was addressed to Mr. Eaton in his Detroit office. As such, it cannot be said to be a direct contact with the United States. However, even if the letter was sent to the United States or Defendant Kopper knew that it would reach the United States, the Court would still conclude that the May 6 letter is insufficient to support personal jurisdiction over Defendant Kopper. *See IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 259 n. 3 (3d Cir.1998) (holding that letters were insufficient to establish purposeful availment of the privilege of conducting activities in the forum where defendant knew letters would enter into the forum and collecting cases); *Gehling v. St. George's Sch. of Med. Ltd.,* 773 F.2d 539, 544 (3d Cir.1985) (holding that mailing letter in the forum was insufficient to constitute purposeful availment of the privilege of acting within the forum and was not a substantial enough contact with the forum to make a "reasonable assertion of personal jurisdiction"); *McDonald v. North Park Props., LLC,* 2002 WL 1781627, *5 (N.D.Tex. Jul.30, 2002) (considering mailing and phone calls related to contract negotiations and fulfillment of contractual duties and holding that the "exchange of communications in developing or carrying out [a] contract [is]" ... insufficient to constitute "purposeful availment" of the forum for personal jurisdiction).

Further, and perhaps more importantly, Plaintiffs have not established that this letter is related to their claims. Plaintiffs have not suggested that the May 6 letter was actionable or fraudulent, and the May 6 letter does not mention the phrase "merger of equals" or the structure of the merger. As such, the May 6 letter does not support Plaintiffs' allegation that Defendant Kopper had a role in negotiating or approving the structure of the merger. To the extent that Defendant Kopper voiced his support for the merger, the letter indicates that he did so "[i]n his capacity as Chairman of the Daimler–Benz AG Supervisory Board" and not in some private, individual and surreptitious capacity as Plaintiffs suggest by their allegations. (Kamps Decl., Ex. D (KOPPER 01181)).[9]

cient to establish specific personal jurisdiction over Defendant Kopper. (D.I. 275 at 24, citing *Catalana v. Carnival Cruise Lines, Inc.,* 618 F.Supp. 18, 22 (D.Md.1984) and *Topik v. Catalyst Research Corp.,* 339 F.Supp. 1102, 1107 (D.Md.1972)). In *Kopper I,* the Court required Plaintiffs to establish a connection between the post-merger visits and their claims for the purposes of exercising specific jurisdiction. 197 F.Supp.2d at 96. In the Court's view, Plaintiffs' claim that mere attendance at meetings in the United States is sufficient to establish jurisdiction goes more to the question of whether general jurisdiction applies to Defendant Kopper. The Court considered and rejected the application of general jurisdiction to Defendant Kopper in *Kopper I. Id.* at 97–99.

9. Throughout their briefing, Plaintiffs also suggest that Defendant Kopper "controlled all

As for Plaintiffs' assertion that the letter supports their allegation that Defendant Kopper approved of or filed misleading information with the SEC, the Court likewise concludes that the May 6 letter is insufficient. The May 6 letter contains no information regarding the SEC filings at issue. To the extent that Plaintiffs claim that the execution of the Business Combination Agreement and Tracinda's Stockholder Agreement "directly resulted" from Defendant Kopper's purported "assurances" contained in the May 6 letter, the Court likewise finds the letter insufficient to support Plaintiffs' assertion. Plaintiffs present no evidence beyond their bare allegations establishing that the May 6 letter was linked to the execution of these documents. Indeed, no Plaintiff claimed to have relied on this letter prior to the jurisdictional discovery permitted in this case. Further, the Tracinda Stockholder agreement references only the authorization of the Management Board, not the Supervisory Board. (Henkin Reply Decl., Ex. 2 (Stockholder Agreement § 3.1)). Accord-ingly, the Court is not persuaded that the May 6 letter is a contact relevant to Plaintiffs' allegations for the purposes of establishing personal jurisdiction over Defendant Kopper.

### d. Defendant Kopper's alleged involvement in press releases

Plaintiffs also direct the Court to two press releases allegedly approved by Defendant Kopper as evidence of Defendant Kopper's direct contacts with the United States. However, both of these press releases emanated from Germany, and thus, they cannot be said to be a direct contact with the United States.[10]

In the alternative, even if these press releases can be considered direct contacts with the United States, the Court is not persuaded that they support the exercise of specific personal jurisdiction over Defendant Kopper. The May 6, 1998 press release, written in German, announces only that Daimler–Benz and Chrysler were

of the shareholder members of the Supervisory Board," and it was due to this control that the shareholder members voted in favor of the merger and/or in favor of other actions taken by the Supervisory Board. In the Court's view, Plaintiffs' allegation is not supported by the evidence and is beyond any reasonable inference that could be drawn from the evidence. For example, Plaintiffs direct the Court to the fact that Defendant Kopper contacted shareholder members, informed them of the transaction, and was told by the members that they would vote in favor of the transaction. In this regard, Plaintiffs make much of Defendant Kopper's statement, "I had them all." (Kamps Decl., Ex. A (Dep. Tr. 125:6)). In context, Defendant Kopper's statement refers to the fact that he received a verbal assurance from the shareholder members that they would vote in favor of the transaction. That Defendant Kopper received these assurance does not mean that the assurances were given because of some pressure or control exerted by Defendant Kopper over the individual shareholder members. Indeed, the evidence does not suggest that Defendant Kopper exerted any influence or pressure over the shareholder members and such an inference is not, in the Court's view, reasonably drawn from the proffered evidence. *See e.g. Blubaugh v. Am. Contract Bridge League,* 2002 WL 31040339, *7 (S.D.Ind. Jul.31, 2002) (holding that unsupported allegations that an individual is a behind-the-scenes control person are insufficient to establish personal jurisdiction).

10. Even if these press releases are viewed under the "effects test" for contacts occurring outside of the United States, see infra Section II.A.2, the Court concludes that they are insufficient to establish specific personal jurisdiction over Defendant Kopper. Plaintiffs have acknowledged that the press releases were targeted "to the world," and the Third Circuit has recently concluded that information accessible worldwide cannot support a claim that tortious activity was aimed at a specific forum. *Remick v. Manfredy,* 238 F.3d 248, 259 (3d Cir.2001).

in discussions concerning a potential merger. The press release expressly states:

Both companies emphasize that to date no concrete agreement has been reached and that any agreement—in addition to other conditions—will be subject to the consent of the responsible corporate bodies of both companies.

Both companies further point out that there is no certainty that any such agreement will be reached or that a merger will in fact be realized.

(Mann Decl., Ex. 4 (translation of Kamps Decl., Ex. E, DCX 1632)). Plaintiffs do not contend that the press release was false, and in the Court's view, Plaintiffs have not connected the press release to their claims so as to establish that the press release supports the exercise of personal jurisdiction over Defendant Kopper.

As for the October 2, 1998 press release, Plaintiffs contend that this press release portrays DaimlerChrysler as "only incidentally German, [and thus] was itself part of Defendants' fraudulent scheme to portray the merger as a merger of equals." (D.I. 275 at 25). In the Court's view, Plaintiffs' allegation stretches beyond any reasonable inference that can be drawn from the text of the press release. The press release states:

While Daimler–Benz regrets that S & P has based its decision [not to include DaimlerChrysler in the S & P 500 Index] solely on the fact that DaimlerChrysler will be legally incorporated in Germany, ignoring that DaimlerChrysler meets all of the other listing criteria to be included in the S & P 500 Index, the company is confident that the negative impact of this decision on the stock market is only short-term.

(Kamps Decl. Ex. E (DCX 0020269); Donaldson Decl. Ex. 30). The press release makes no mention of the phrase "merger of equals" and contains no description of the merger whatsoever. Further, this press release was released after the Chrysler shareholders had approved the merger, and thus, it is unclear to the Court how this press release could be alleged to have defrauded the shareholders. Indeed, Plaintiffs have not pointed to this press release in their Complaints, and Plaintiff Tracinda has not identified this press release as a false and misleading representation allegedly made by Defendants. (Tracinda Interrogatory Resp. No. 3; Henkin Reply Decl. Ex. 5).

e. Summary

In sum, the Court concludes that Defendant Kopper's alleged direct contacts with the United States are insufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over Defendant Kopper. Plaintiffs have also failed to show that Defendant Kopper purposefully availed himself of the privilege of conducting activities in the United States, thereby invoking the benefits and protections of the United States. Plaintiffs have also failed to establish a nexus between Defendant Kopper's alleged contacts with the United States and their claims. Accordingly, the Court concludes that Plaintiffs cannot establish specific personal jurisdiction over Defendant Kopper based on his alleged direct contacts with the United States.

2. Whether Defendant Kopper had contacts outside the United States sufficient to establish the requisite minimum contacts to support the exercise of specific jurisdiction

A defendant's contacts outside of the forum may be sufficient to establish personal jurisdiction over the defendant if they satisfy the "effects test." In the Third Circuit, the effects test requires the plaintiff to show the following:

(1) The defendant committed an intentional tort;

(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–266 (3d Cir.1998). To satisfy the third element of the effects test, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266. It is not enough that the defendant should have known or reasonably could have foreseen that his conduct would reach the forum. Rather, the plaintiff must show that the defendant "expressly aimed" and intended his tortious conduct to reach the forum. *Id.* In evaluating events occurring outside of the forum in light of the effects test, a court should proceed "with caution, particularly in an international context." *See e.g. Huang v. Sentinel Gov't Secs.*, 657 F.Supp. 485, 489 (S.D.N.Y.1987) (quoting *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 1000 (2d Cir.1975)).

██ In addition to his alleged direct contacts with the United States, Plaintiffs also contend that Defendant Kopper's contacts outside of the United States are sufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over Defendant Kopper. Plaintiffs direct the Court to several meetings in Germany that Defendant Kopper participated in, as well as his May 6, 1998 letter to Mr. Eaton. The Court will evaluate these contacts in the context of the proffered evidence and Plaintiffs' claims to determine if they are sufficient to

establish a prima facie case of personal jurisdiction over Defendant Kopper.

a.  April 18, 1998 Meeting

Plaintiffs direct the Court to an April 18, 1998 meeting between Defendant Kopper and Messrs. Schrempp and Cordes at Defendant Kopper's home in Germany to support their allegation that Defendant Kopper approved the terms and structure of the merger. At this meeting, Defendant Kopper was updated regarding the status of the negotiations and discussed valuation, governance, and other topics related to the merger, and Defendant Kopper gave his "interim blessing" to continue negotiating. Plaintiffs maintain that "[e]vidence of this meeting alone satisfies Plaintiffs' burden" under the effects test. (D.I. 275 at 29).

After reviewing the record as it relates to this meeting in light of the effects test, the Court disagrees with Plaintiffs' position. Plaintiffs have not provided the Court with any basis for their claim that Defendant Kopper's actions at this meeting, i.e. discussing the progress of the negotiations and giving his approval for them to continue, were tortious actions aimed at the United States. Indeed, Plaintiffs have not disputed Defendant Kopper's assertion that he could not by himself, under German law, approve the merger. Rather, the Supervisory Board of which Defendant Kopper was a part was the entity that needed to approve the merger.

Plaintiffs claim that Defendant Kopper's approval of the merger was critical to proceeding and that Defendant Kopper participated in negotiating the merger. In the Court's view, Plaintiffs' assertion is not grounded in the evidence or reasonably inferred from the evidence. Indeed, even

Chrysler's documents reflect that the primary concern was whether the Supervisory Board as a whole would approve the merger, and not whether Defendant Kopper alone would approve the merger. (Donaldson Decl., Ex. 8). Further, the deposition testimony of Defendant Kopper cited by Plaintiffs does not support their assertion that Defendant Kopper single-handedly approved of the merger or negotiated the merger. Rather, Defendant Kopper testified in his deposition that he was only updated generally about the progress of the merger and that details were not discussed. (Henkin Reply Decl., Ex. 1 (Tr. 56–72)). Defendant Kopper testified that they did not discuss the phrase merger of equals or any impact on the price as a result of the transaction being a merger of equals. (Henkin Decl., Ex. 1 (Tr. 69, 71–72)). Defendant Kopper testified that he gave only general advice regarding valuation and other issues, and that he did not even have the materials to make more specific recommendations. (Henkin Decl., Ex. 1 (Tr. at 60)). In fact, Defendant Kopper expected Messrs. Shrempp and Cordes to provide him with answers about open issues such as the registration of the company, which further suggests that Defendant Kopper had no role in actually negotiating the details of the transaction. (Henkin Decl., Ex. 1 (Tr.

at 60)). To the extent that Defendant Kopper expressed any thoughts with regard to the structure of the company, Defendant Kopper indicated that he believed there would be a combining of joint management and joint leadership in the new company and that, from his view, he wanted as many Americans as possible on the Management Board level.[11] (Henkin Decl., Ex. 1 (Tr. at 64)). Accordingly, the Court finds that the April 18 meeting at Defendant Kopper's home is insufficient to satisfy the "effects test" for purposes of exercising specific personal jurisdiction over Defendant Kopper.

#### b. May 6, 1998 Meeting and Letter

Plaintiffs also direct the Court to a May 6, 1998 meeting between Defendant Kopper and Messrs. Schrempp, Eaton at the corporate headquarters of Deutsche Bank, and a letter dated May 6, 1998 from Defendant Kopper to Mr. Eaton. Lead Plaintiffs contend that at this meeting and in the letter, Defendant Kopper unilaterally committed the Supervisory Board to vote in favor of the merger, thereby "eliminating the final hurdle" to the merger.

After reviewing the record as it relates to the May 6, 1998 meeting and letter, the Court finds that Plaintiffs' evidence is in-

---

**11.** Plaintiffs direct the Court to the deposition testimony of Mr. Schrempp (D.I.449) contending that it undermines Defendant Kopper's assertions regarding his role in the merger. In the Court's view, Mr. Schrempp's testimony is consistent with Defendant Kopper's testimony. Mr. Schrempp's testimony does not support Plaintiffs' assertion that Defendant Kopper had a primary role in negotiating or causing the merger. Rather, Mr. Schrempp's testimony supports Defendant Kopper's testimony that the structure of the merger was decided on and presented to him by others. For example, Mr. Schrempp testified that he and Mr. Cordes told Defendant

Kopper that the Supervisory Board should be equally divided between Daimler and Chrysler, and Mr. Schrempp denied discussing the need to reduce the number of members of the Management Board with Defendant Kopper (Schrempp Tr. at 92:18–93:1, 93:22–94:5). Further, Mr. Schrempp's testimony concerning the purposes of the April 18 meeting and the May 6 letter is also consistent with Defendant Kopper's testimony regarding these issues. Accordingly, the Court is not persuaded that Mr. Schrempp's deposition testimony supports the exercise of specific jurisdiction over Defendant Kopper.

sufficient to satisfy the effects test. First, the shareholders and boards of both Chrysler and Daimler–Benz needed to approve the merger. Thus, Defendant Kopper's assurance that the Supervisory Board would approve the merger, would have been insufficient to consummate the merger. Further, Plaintiffs have failed to establish that Defendant Kopper's "assurance" was a tortious action expressly aimed at the United States. In reviewing the May 6, 1998 letter and the relevant deposition testimony, it appears to the Court that Defendant Kopper merely expressed his support for the transaction in his capacity as Chair of the Supervisory Board and his belief that the others would vote to support it. (Henkin Reply Dec., Ex. 1 (Tr. at 109)). Defendant Kopper further testified that he and/or Schrempp called and faxed the Board members and invited them to attend an Extraordinary Meeting of the Board the same day. (Henkin Reply Decl., Ex. 1 (Tr. at 116)). However, Defendant Kopper testified that he did not schedule a vote at that meeting, because he knew that the members would need time to review the information, so the vote was scheduled ten days later. (Henkin Reply Decl., Ex. 1 (Tr. at 109–110, 116)). This further evidences that Defendant Kopper could not unilaterally approve the merger as Plaintiffs' suggest by their allegations. Accordingly, the Court is not persuaded that the evidence of the May 6, 1998 letter or the May 6, 1998 meeting is a tortious act aimed at the United States necessary to establish personal jurisdiction under the effects test.

d. Meetings between May 14, 1998 and July 31, 1998

Plaintiffs next direct the Court to meetings of the Extraordinary Supervisory Board in Germany on May 14, June 24 and July 31. Plaintiffs contend that Defendant Kopper participated in these meetings, "which furthered Defendants' fraudulent scheme and 'caused effects' in the United States." D.I. 275 at 29. Plaintiffs also contend that at these meetings, Defendant Kopper "shepherded the misrepresented deal from conception to fruition." (D.I. 275 at 30).

After reviewing the evidence proffered by Plaintiffs, the Court is not persuaded that these meetings are sufficient to satisfy the effects test. First, Plaintiffs cite to their Complaint in support of their allegations. However, at this stage, Plaintiffs must move beyond the allegations of their pleadings. As for the remaining documents that Plaintiffs rely upon, the Court finds that the documents do not establish a connection between Plaintiffs' claims and the actions of Defendant Kopper or that Defendant Kopper committed tortious acts aimed at the United States. Rather, in the Court's view, these documents show Defendant Kopper acting in his capacity as a non-executive Chairman of the Supervisory Board. Defendant Kopper did not avail himself of the protections of United States laws in undertaking these actions, and the Court is not persuaded that Defendant Kopper expressly aimed his actions at the United States, as he was merely performing the job that he was required to perform under German law. As the Court previously noted, Defendant Kopper's actions in the United States were conducted solely within his corporate capacity, and therefore, are insufficient in these circumstances to establish personal jurisdiction. With regard to these meetings, the connection is even more tenuous in that Defendant Kopper's actions took place in Germany in his corporate capacity. Accordingly, the Court is not persuaded that Plaintiffs' evidence of the Supervisory

Board meetings in Germany are sufficient to establish a prima facie case of personal jurisdiction under the effects test.

### e. August 4, 1998 Chrysler Document

Plaintiffs next direct the Court to an August 4, 1998 Chrysler document which Plaintiffs contend demonstrate that Defendant Kopper "undoubtedly knew [that] the information he discussed and approved was destined for filing with both the German regulatory authorities and the SEC." (D.I. 275 at 30, n. 20). The document is a memorandum from J.D. Donlon, III to G.C. Valade attaching a copy of the latest draft of section 5 of the Merger Accountant's Report and indicating that the German Business Combination Report and the Form 4 would be filed with the SEC.

Reviewing this document, the Court is not persuaded that it supports Plaintiffs' allegation. The document is not copied to Defendant Kopper and Plaintiffs have presented no evidence that Defendant Kopper received the document, reviewed the document or knew of its existence. In addition, Plaintiffs have not presented any evidence that Defendant Kopper had knowledge of the matters discussed in the document. Accordingly, the Court cannot find that this document demonstrates that Defendant Kopper engaged in tortious conduct expressly directed at the United States, and therefore, the Court finds that Plaintiffs have not established a prima facie case of personal jurisdiction under the effects test.

### f. Defendant Kopper's Relationship with Deutsche Bank

Plaintiffs also raise Defendant Kopper's relationship with Deutsche Bank in support of their personal jurisdiction allega-

tions. Defendant Kopper was the Chair of the Supervisory Board of Deutsche Bank, Daimler–Benz and now DaimlerChrysler's largest shareholder, at the same time that he was Chair of the Daimler–Benz Supervisory Board. Plaintiffs suggest that Defendant Kopper was Deutsche Bank's "representative" on the Daimler–Benz Supervisory Board and that he controlled the Supervisory Board as a result of that position. (D.I. 282 at 4–6; D.I. 275 at 5).

The Court has reviewed the record as it relates to Plaintiffs' allegation and finds that the allegation is not supported by the evidence. In his deposition, Defendant Kopper testified that he did not discuss the merger with Deutsche Bank and that he was not representing Deutsche Bank at Daimler–Benz or DaimlerChrysler. (Henkin Reply Decl., Ex. 1 (Tr. at 36–38)). Plaintiffs have not directed the Court to any evidence to rebut Defendant Kopper's testimony, and therefore, the Court cannot conclude that Defendant Kopper's relationship with Deutsche Bank supports the exercise of personal jurisdiction over Defendant Kopper. *See e.g. Blubaugh*, 2002 WL 31040339 at *7 (holding that unsupported allegations that individuals are behind-the-scenes controlling persons are insufficient to establish jurisdictional facts necessary to exercise personal jurisdiction).

### g. Summary

In sum, the Court concludes that Defendant Kopper's alleged contacts outside of the United States are insufficient to satisfy the "effects test" for purposes of exercising personal jurisdiction over Defendant Kopper. Plaintiffs have failed to show that Defendant Kopper purposefully aimed tortious conduct at the United States. In addition, Plaintiffs have failed to show a nexus between their claims and Defendant

Kopper's alleged contacts outside of the United States. Accordingly, the Court concludes that Plaintiffs cannot establish a prima facie case of specific personal jurisdiction over Defendant Kopper based on his alleged conduct outside of the United States.

B. *Whether The Exercise Of Specific Jurisdiction Over Defendant Kopper Comports With Reasonableness Under The Due Process Clause*

Having concluded that Plaintiffs cannot satisfy the minimum contacts component of specific personal jurisdiction, the Court need not discuss the second prong of whether the exercise of jurisdiction over Defendant Kopper would be reasonable. In addition, the Court need not consider Defendant Kopper's second argument, that Plaintiffs have failed to adequately plead control person claims against him. Accordingly, the Court will grant Defendant Kopper's Motion To Dismiss for lack of personal jurisdiction.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant Kopper's Motion To Dismiss on the grounds that the Court lacks personal jurisdiction over Defendant Kopper.