### SECURITIES AND EXCHANGE COMMISSION

v.

### THE INFINITY GROUP COMPANY, et al.

**Civil Action No. 97–5458.**

United States District Court, E.D. Pennsylvania.

Nov. 25, 1998.

Kingdon Kase, U.S. S.E.C., Philadelphia, PA, for S.E.C.

J. Bradford McIlvain, Dilworth Paxson, Philadelphia, PA, for Trustee.

Mark A. Klugheit, Dechert Price and Rhoads, Philadelphia, PA, for Claimant Bailey.

**MEMORANDUM**

DALZELL, District Judge.

Now before us is one of the final chapters of an epic which the Securities and Exchange Commission (hereinafter "SEC") began in August of 1997.

Because we already have issued many Orders and two published opinions in this matter,[1] we will only rehearse the facts here briefly. On August 27, 1997, the SEC filed a civil enforcement action against several defendants and relief defendants, including Geoffrey P. Benson and The Infinity Group Company (hereinafter "TIGC"), alleging in essence that TIGC engaged in a Ponzi scheme to defraud public investors through the offer and sale of securities and, in the process, violated the federal securities laws. After a preliminary injunction hearing, on September 5, 1997, we appointed Robert F. Sanville (hereinafter "Sanville" or "Trustee") as Trustee of TIGC and empowered him to take control and possession of all of TIGC's assets, funds, and other property. *See* September 5, 1997 Order. In that Order, we empowered Sanville to "pursue such causes of action as deemed necessary and appropriate and in the interests of the estate to recover assets of TIGC, or assert any right on behalf of investors who purchased securities from defendants." *Id.* at 6. We confirmed these powers in the Trustee in our Final Injunction, which we issued on February 6, 1998, after a four-day final injunction hearing.

Now before us is Sanville's motion (1) to compel turnover of assets held by one William W. Bailey (hereinafter "Bailey"); (2) to void notes issued to Bailey; and (3) to void real property mortgages granted to Bailey.

The transfers at the heart of the instant motion represent returns on investments Bailey allegedly made in TIGC's Ponzi

scheme.[2] The transfers from TIGC to Bailey at issue are: a payment of $100,000 on December 17, 1996; a payment of $300,000 on May 9, 1997; a payment of $226,000 on August 22, 1997;[3] and a payment of $37,000 on an as yet undetermined date. Also at issue are four promissory notes that TIGC issued to Bailey totaling obligations of $1.5 million, and four mortgages, totaling more than a million dollars, that TIGC issued to Bailey for real estate located in Ohio.

We have subject matter jurisdiction over Sanville's claim against Bailey under the Securities Exchange Act of 1934 and the Securities Act of 1933. *See* 15 U.S.C. § 78aa ("The district courts ... shall have exclusive jurisdiction of ... all suits in equity and actions at law brought to enforce any liability or duty [under this chapter]"); 15 U.S.C. § 77t(b) (noting that the SEC may bring an action in the district court to enjoin acts or practices which violate the Securities Act); 15 U.S.C. § 77v(a) ("The district courts ... shall have jurisdiction ... to enforce any liability or duty created by this subchapter."). *See also TIGC I, supra* n. 1.

▮ Because we have subject matter jurisdiction, we have "authority to grant the full panoply of equitable remedies so that the [victims] can obtain complete relief." *S.E.C. v. Antar*, 831 F.Supp. 380, 398 (D.N.J.1993), citing *S.E.C. v. Materia*, 745 F.2d 197, 200 (2d Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985). These remedies include disgorgement, asset freezes, appointments of receivers, repatriation of assets, constructive trusts, and restitution. *See id.*

▮ Our jurisdiction extends not only to the defendants and relief defendants who the SEC named in the suit, but also to people

---

**1.** *See S.E.C. v. Infinity Group Company*, 993 F.Supp. 321 (E.D.Pa.1998) *("TIGC I")*; *S.E.C. v. Infinity Group Company*, 993 F.Supp. 324 (E.D.Pa.1998)*("TIGC II ")*.

**2.** Bailey claims that he made the following payments as investments in TIGC: on August 13, 1996, a payment of $10,000; on August 30, 1996, a payment of $14,000; on November 1, 1996, a payment of $100,000; and on February 18, 1997,

a payment of $300,000. To date, however, the Trustee has been unable to uncover any evidence to show that Bailey actually made the alleged $100,000 and $300,000 payments.

**3.** We note that TIGC made this $226,000 payment only five days before the SEC commenced this action.

such as Bailey.[4] The district court in *Antar* noted that "the securities statutes vest federal courts with jurisdiction over claims against non-violators." *Id; see also Deckert v. Independence Shares Corp.*, 311 U.S. 282, 288–89, 61 S.Ct. 229, 85 L.Ed. 189 (1940) (holding that a federal court had jurisdiction over a claim in a securities fraud action seeking relief from a non-party who held funds sought by the plaintiffs); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1338–39 (2d Cir.1974), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974) (noting that the Securities Exchange Act gave the district court jurisdiction to restrain non-violators from disposing of assets claimed by plaintiffs).

Thus, it is clear that we have subject matter jurisdiction over Sanville's claim against Bailey.

Bailey raises a number of arguments in response to Sanville's motion. We will deal with two issues in this Memorandum, Bailey's arguments as to personal jurisdiction and choice-of-law. We will address the remainder of his arguments when we reconvene for a hearing on the motion next month.[5]

## A. *Personal Jurisdiction Over Bailey*

Bailey argues that we are without personal jurisdiction over him and his assets. We disagree, for several reasons.

■ First, Bailey consented to our jurisdiction when he filed a proof-of-claim form with the Trustee in an attempt to recover a $24,000 investment he purportedly made in TIGC.[6] We agree with the reasoning of the bankruptcy court in *In re Schwinn Bicycle*

*Co.*, 182 B.R. 526, 530 (Bankr.N.D.Ill.1995). In *Schwinn Bicycle*, the bankruptcy court held that a proof-of-claim form was tantamount to a complaint, and that a party filing such a claim "will necessarily be viewed as having submitted to personal jurisdiction in that forum for all possible grounds of counterclaim." The court specifically noted that "by filing a proof of claim in a … bankruptcy case, a creditor consents to personal jurisdiction in all possible counterclaims brought by the estate." *Id.* at 531, citing *In re American Export Group Int'l Servs., Inc.*, 167 B.R. 311, 314 (Bankr.D.D.C.1994).

Bailey relies on *In re Carnell Const. Co.*, 424 F.2d 296, 298–99 (3d Cir.1970) to argue that he has not consented to our jurisdiction. In *Carnell*, a debtor owed money to a bank on two separate loans. The bank filed a proof-of-claim form for only one of the loans. Our Court of Appeals held that the bank had not submitted to personal jurisdiction on the loan for which it had not filed a proof-of-claim. The court noted that " 'a creditor who files his claim in the Bankruptcy Court impliedly consents to be sued on counterclaims arising out of the same transaction, but … such a filing does not constitute implied consent to be sued on an alleged cause of action arising out of a different subject matter.' " *Id.* at 298, *quoting In re Beasley–Gilbert's, Inc.*, 285 F.Supp. 359, 361 (S.D.Ohio, 1968).

Here, Bailey cannot plausibly argue that his proof-of claim and the Trustee's claims against him arise out of "different subject matter." Both Bailey's and Sanville's claims arise from Bailey's alleged participation in TIGC's Ponzi scheme and his many dealings with TIGC and its principals in furtherance

4. Based on the statements of Kingdon Kase of the SEC at a hearing on the Trustee's motion on November 23, 1998, it appears that the SEC did not name Bailey as a relief defendant because they were unaware of his involvement with TIGC at the time when they commenced their action. As developed at both the preliminary and final injunction hearings, TIGC's records at the time of the August, 1997, raid by the Ohio Securities Commission were chaotic and incomplete.

5. At the hearing on November 23, we afforded the parties expedited discovery in preparation for a resumption of the hearing on December 21. The essence of the factual dispute that divides

Sanville and Bailey is whether Bailey was an "innocent," arms' length investor (as he claims) or someone well aware of the Bensons' illegal schemes who participated hugger-mugger with this latter-day Dickensian gang (as the Trustee claims).

6. Bailey also may have submitted to our jurisdiction when he assisted Mary Tolley, another TIGC investor, file a proof-of-claim form; however, because we have an adequate basis for asserting jurisdiction over Bailey, we need not reach the issue of whether the Tolley proof-of-claim gives us jurisdiction.

thereof. We have no problem holding that Bailey's and Sanville's claims arise out of the same transaction and, therefore, that Bailey has submitted to the jurisdiction of this Court. To hold otherwise would be to allow Bailey to invoke our jurisdiction only for his own personal benefit.

■ Second, even if Bailey had not consented to our jurisdiction, we would have jurisdiction over him by virtue of the federal securities laws. 15 U.S.C. § 78aa and 15 U.S.C. § 77v give the federal district courts jurisdiction to enforce "any liability or duty" created by the Securities Exchange Act of 1934 and the Securities Act of 1933. Furthermore, these sections of the securities laws authorize nationwide service of process. *See, e.g., City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463, 467 (M.D.Pa. 1985). " '[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States' " rather than with any particular state. *Sovereign Bank, F.S.B. v. Rochester Community Savings Bank,* 907 F.Supp. 123, 125 (E.D.Pa.1995), *quoting Busch v. Buchman, Buchman & O'Brien,* 11 F.3d 1255, 1258 (5th Cir.1994). There is absolutely no doubt that Bailey, a Virginia resident, has minimum contacts with the United States. Thus, we hold that we have jurisdiction over Bailey pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934.

■ A third source of jurisdiction over Bailey is our broad equitable power to remedy violations of the federal securities laws. We have the power to impose equitable relief even on a third party against whom no wrongdoing is alleged[7] if it is established that the third party possesses illegally obtained profits to which he has no legitimate claim. *See S.E.C. v. Cherif,* 933 F.2d 403, 414 n. 11 (7th Cir.1991) (noting that courts "have jurisdiction to decide the legitimacy of ownership claims made by non-parties to as-

sets alleged to be proceeds from securities laws violations"); *see also S.E.C. v. Wencke,* 783 F.2d 829 (9th Cir.1986), *cert. denied,* 479 U.S. 818, 107 S.Ct. 77, 93 L.Ed.2d 33 (1986); *Antar,* 831 F.Supp. at 398 (noting that "the securities statutes vest federal courts with jurisdiction over claims against non-violators").

■ Bailey argues that the Trustee's failure to comply with the federal receiver statute, 28 U.S.C. § 754, divests him of jurisdiction in this matter. This section allows a court-appointed receiver to assert control over receivership property in a district other than the district in which he was appointed by filing, within ten days of his appointment, a copy of the complaint and the order of appointment in the district where the property is located. The statute says that "failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district." Bailey argues that because the Trustee failed to file in the Western District of Virginia, he is without jurisdiction in this matter.

We reject this argument. When we appointed Sanville as Trustee in September of 1997, there was no way for him then to know that he should file a claim in the Western District of Virginia. His job was (and is) to track down and recover as much of TIGC's assets as possible, wherever those assets might be, an enterprise he has to date done indefatigably and with rich rewards for TIGC's thousands of victims. To force him to comply with section 753 would have made him needlessly expend time and the victims' money to file claims in all 94 districts, as he could not at that time have known the location of all of TIGC's assets in this nationwide fraud. Such a result would be contrary to the purpose of the Trust, which is to recover as much money as possible for the defrauded investors as economically as possible. We therefore refuse to hold that Sanville's failure to comply with section 754 divests him of jurisdiction over Bailey.

---

7. It will be recalled that the Trustee contends that Bailey was anything but innocent, and the Trustee's counsel reported at the November 23 hearing that Bailey invoked his Fifth Amendment rights at his deposition in July and September of this year.

.Furthermore, even if we were to hold that Sanville must comply with section 754, our Court of Appeals has held that "a receiver who has failed to file within the ten-day period [can] reassume jurisdiction by a later filing, as long as the rights of others have not been prejudiced during the intervening period." *S.E.C. v. Equity Serv. Corp.*, 632 F.2d 1092, 1095 (3d Cir.1980). It is clear from *Equity Service Corp.* that our Court of Appeals did not intend a strict reading of the receiver statute. If we needed to rely on this statute to give Sanville jurisdiction, we could simply direct him to file a claim in the Western District of Virginia, as Bailey has not shown that his rights have been prejudiced. However, because we conclude that Bailey's proof-of-claim is an adequate basis for our jurisdiction, and because forcing Sanville to file in Virginia would be a needless waste of Trust dollars, we hold that Sanville's failure to file does not divest him of jurisdiction.

Based on these conclusions, we have no trouble holding that we have personal jurisdiction over Bailey.

### B. *Choice of Law* [8]

The Trustee is attempting to recover TIGC's assets from Bailey using a variety of theories, one of which is that the payments, notes, and mortgages from TIGC to Bailey were fraudulent conveyances. Sanville argues that under the Uniform Fraudulent Transfer Act (hereinafter "UFTA"), Bailey is required to disgorge these transfers. Both Ohio and Pennsylvania have adopted the UFTA. *See* Ohio R.C. §§ 1336.01 to 1336.11; 12 Pa. C.S.A. § 5101 *et seq.*

Bailey argues that the UFTA does not govern this action, because Virginia has not adopted it. He argues that Virginia's fraudulent conveyance law should apply, because Virginia has the most substantial interest in and relationship to the dispute. Thus, we are faced with the issue of which state's law should apply.

■ Because we are sitting pursuant to our federal question jurisdiction, federal choice-of-law principles apply. *See, e.g., In re Lindsay*, 59 F.3d 942, 948 (9th Cir.1995); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 n. 8 (3d Cir.1992); *Wells Fargo Asia Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir. 1991); *Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352 (D.Del. 1993). Federal courts have relied on the Restatement (Second) of Conflict of Laws (hereinafter "Restatement") as a source of federal choice-of-law principles. *See Pfizer*, 812 F.Supp. at 1360, citing *Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir.1992).

■ A number of courts have classified fraudulent conveyance claims as torts for purposes of choice-of-law issues. *See, e.g., RCA Corp. v. Tucker*, 696 F.Supp. 845, 847, 853–54 (E.D.N.Y.1988); *In re O.P.M. Leasing Serv., Inc.*, 40 B.R. 380, 391–95 (Bankr. S.D.N.Y.1984). Thus, we will look to the Restatement's choice-of-law principles governing tort claims.

■ The Restatement's general approach with respect to tort claims is to apply the law of the state with the most significant relationship to the occurrence and the parties. *See* Restatement (Second) of Conflict of Laws § 145 (1971); *see also, e.g., Naghiu v. Inter-Continental Hotels Group, Inc.*, 165 F.R.D. 413, 421 (D.Del.1996) (noting that "[u]nder section 145 of the Restatement, the local law of the state which 'has the most significant relationship to the occurrence and the parties ...' will govern the rights and liabilities of the parties in a tort action." (quoting Restatement (Second) of Conflict of Laws § 145(1))). The contacts we are to consider under § 145 to determine which state has the most significant relationship are:

(a) The place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicil, residence, nationality, place of incorporation, and place of business of the parties; and

**8.** On November 23, the Trustee's counsel asked us to resolve the dispute over this legal issue because it may affect the scope of both the expedited discovery and the December hearing. Since this request has the virtue of good sense, we here resolve this relatively simple issue.

(d) the place where the relationship, if any, between the parties is centered.

Also, Section 148 of the Restatement lists a number of contacts we should consider when deciding which state has the most significant relationship to an alleged fraud or misrepresentation. These contacts include:

(c) the place where the defendant made the representations;

(d) the domicil, residence, nationality, place of incorporation, and place of business of the parties;

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time[.]

Under this analysis, it is clear that Ohio has the most significant relationship to the instant dispute. While the only contact which Virginia has with the instant motion is that Bailey resides within its borders,[9] Ohio's contacts run much deeper: TIGC and its principals were based and domiciled there, and so that state is both the "residence" and "place of business" of one of the parties. The mortgages TIGC issued to Bailey, totaling over a million dollars, are for real estate located in Ohio; Ohio is thus the location of "tangible thing[s]" which are "the subject of the transaction between the parties." And the investments and transfers between Bailey and TIGC took place in Ohio, so all of the "conduct causing the injury" occurred there. We hold that Ohio law applies to the Trustee's fraudulent transfer claim.[10]

### ORDER

AND NOW, this 25th day of November, 1998, upon consideration of the Trustee's motion for relief against claimant William W. Bailey, and upon consideration of Bailey's argument regarding the jurisdiction of this Court over the subject matter and his person, and having in the accompanying Memorandum rejected Bailey's arguments on these points and on the choice of law "issue", and confirming the oral order made in open court on November 23, 1998, it is hereby ORDERED that:

1. The parties are afforded leave to conduct expedited discovery as to the issues raised in the Trustee's motion and in Bailey's remaining defenses; and

2. A resumed hearing on the motion, not to exceed two days' duration, shall commence at 10:00 a.m. on December 21, 1998 in Courtroom 5C.

---

9. Under Bailey's reasoning, we would be hard-pressed to decide whether Virginia law or Pennsylvania law applied, because while Bailey is a resident of Virginia, Sanville, the other party to this motion, is a resident of Pennsylvania.

10. It is something of a mystery to us why Bailey is so concerned about this choice-of-law issue, since the result seems to be the same under both Ohio and Virginia law. Under Ohio law, we could void the transfers and allow the Trustee to take charge of the assets if we found, *inter alia*, that TIGC made the transfers without receiving reasonably equivalent value in exchange for them. Bailey states that Virginia's Fraudulent and Voluntary Conveyance Act "significantly differs from the UFTA by exempting any 'purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.' " *See* Bailey Resp. at 11–12, *quoting* Va.Code Ann. § 55–80. However, for Bailey to prevail under the Virginia law, he would have to prove both that he gave valuable consideration in exchange for the lavish benefits that TIGC apparently conferred on him, and that he had no notice of TIGC's fraudulent activities. Considering the Trustee's averments about the value of TIGC's transfers to Bailey, Bailey's relationships with TIGC principals (including, it seems, significant payments to help defray Geoff Benson's legal fees), and Bailey's invocation of the Fifth Amendment at his depositions in July and September of this year, it is not at all clear that Virginia law would produce a different result than Ohio law will.