**Roy M. TERRY, Jr., et al., Plaintiffs,**

v.

**Virginia JUNE (Guardian), Defendant.**

**No. CIV.A. 3:03CV00052.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Feb. 23, 2005.

Douglas Alan Scott, John C. Smith, Durrette Bradshaw, Richmond, VA, for Plaintiffs.

Edward Bennett Lowry, Michie Hamlett Lowry Rasmussen & Tweel PC, Peter Booth Vaden, Peter Vaden, Attorney At Law, Charlottesville, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

The plaintiffs ("Receiver") filed a motion for partial summary judgment on July 2, 2004, requesting summary judgment on six separate issues. On July 9, 2004, the Magistrate Judge[1] stayed all proceedings in this case except as to Section VI of the Receiver's summary judgment motion, which argues that, under applicable choice-of-law rules, the Uniform Fraudulent Transfer Act (UFTA)—either in its generic form or as adopted by Michigan—should be applied to the Receiver's fraudulent conveyance claim. On August 19, 2004, the defendant[2] filed an opposition to Sec-

---

1. By order of January 7, 2004, this case was referred to Magistrate Judge B. Waugh Crigler pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B).

2. Robert F. June, Sr. was the original defendant in this case. Because he suffers from dementia associated with Alzheimer's disease, his daughter, Virginia June, was appointed his guardian by a Michigan probate court. On January 30, 2004, Magistrate Judge Cri-

tion VI of the Receiver's motion, to which the Receiver filed a rebuttal on September 1, 2004. On December 14, 2004, the Magistrate Judge filed a Report and Recommendation, wherein he recommended: 1) a finding that the law of Virginia controls the fraudulent conveyance claim; 2) a finding that the Vavasseur program was a Ponzi scheme (thereby granting Part I of the Receiver's motion for summary judgment); and 3) a denial of the balance of the Receiver's motion as premature. The defendant then moved to reconsider the portions of the Report and Recommendation that addressed issues other than the choice of law, arguing that those issues had been stayed and therefore not briefed. On December 16, 2004, the Magistrate Judge issued an Order Supplementing the Report and Recommendation, finding that all issues other than the court's choice of law and the claim that the Vavasseur Program was a Ponzi scheme are not ripe for decision. Both parties then filed timely objections to the magistrate's report, as well as responses to the other parties' objections. The court therefore reviews the Report and Recommendation *de novo*. Fed.R.Civ.P. 72(b).

As a preliminary matter, the court finds that only the choice-of-law issue is ripe for decision. All other portions of the Receiver's motion for summary judgment, including the claim that the Vavasseur program was a Ponzi scheme, were stayed by the Magistrate Judge's July 9, 2004 order. This opinion, therefore, takes no position on Sections I—V of the summary judgment motion. As for the choice of law, the court concludes that it is appropriate to apply federal common law—in the form of the Uniform Fraudulent Transfer Act—to the Receiver's fraudulent conveyance claim.

## I.  FINDINGS OF FACT [3]

Beginning in April 1998 and continuing through 2001, Terry L. Dowdell orchestrated and operated a classic Ponzi scheme. Dowdell solicited contributors for an investment and trading program marketed by Vavasseur Corporation ("Vavasseur"), a Bahamian corporation owned and operated by Dowdell. In March 2000, Dowdell moved his residence and place of business from Florida to Charlottesville, Virginia. The Vavasseur program entailed trading of medium-term debentures and

gler ordered that Virginia June be substituted as the defendant in this case.

**3.** These findings of fact are taken largely from this court's Memorandum Opinion of September 12, 2003, in this case. 2003 U.S. Dist. LEXIS 16080 at *1–4, 2003 WL 22125300 at *1. They do not include any factual findings from the magistrate's December 14, 2004 Report and Recommendation to which a party specifically objected. The defendant also objected to the magistrate's report to the extent it referred to Terry Dowdell's "Consent and Stipulation" filed on June 4, 2002, in the main case, *SEC v. Dowdell*. The court finds that the magistrate could properly include the Consent and Stipulation as part of the record for purposes of summary judgment. The Receiver filed an Affidavit of Terry Dowdell in this case on July 21, 2004, which incorporated by reference Dowdell's earlier Consent and

Stipulation. The defendant complains that this affidavit was filed two days after the Receiver's deadline for supplementing his motion for summary judgment. The defendant, however, filed her affidavit eight days after her deadline for responding to the Receiver's motion. Nevertheless, the court is sensitive to the fact that discovery has been stayed in this case and that the defendant has not yet had a full opportunity to address the contents of the Dowdell Affidavit, for example by deposing Dowdell or the Receiver. Therefore, the court's factual findings will rely on its previous opinion of September 12, 2003, and other facts which appear to be undisputed. The court finds it prudent to accept the factual background section of the Report and Recommendation only insofar as it is consistent with the facts cited in this opinion.

other private bank debt. Clients were promised returns on their investments of at least four percent per week for a minimum of forty weeks of trading activity, for an expected annual return of 160 percent. To perpetuate his scheme, Dowdell would simply use the money contributed by the newest investors to pay earlier investors their promised "profits." He would then misappropriate the remaining funds, transferring at least $29 million to business associates, family, and friends. In January 2001, the Securities and Exchange Commission ("SEC"), later joined by the Federal Bureau of Investigation, initiated an investigation into the Vavasseur program. The investigation to date has identified at least seventy-six direct investors, with an undetermined number of subinvestors, who contributed to the fraudulent investment program. While the exact amount of investors' loss is as yet unknown, it is estimated to exceed $121 million.

To facilitate recovery of these losses, this court appointed Roy M. Terry, Jr. and the law firm of DuretteBradshaw PLC as Receiver for Terry L. Dowdell and his various business entities by orders entered July 12, 2002, September 17, 2002, and February 18, 2003. On May 14, 2003, this court entered an order reappointing Roy M. Terry, Jr. and DuretteBradshaw PLC as Receiver.

The plaintiffs, acting in their capacity as Receiver, filed this action against Robert F. June, Sr. ("June"), a resident of Michigan, on June 10, 2003, asserting claims of unjust enrichment and fraudulent conveyance. Robert F. June, Jr. is alleged to have been an employee of Terry Dowdell and to have managed the investments of his father, Robert F. June, Sr. The Receiver claims that Robert F. June, Sr. was a Vavasseur investor, but that unlike many such investors, the amount of his invest-

ment was repaid in full by Terry Dowdell. In addition, the Receiver contends that June received substantial "earnings" on his investment with Vavasseur. According to the Receiver, these earnings were not actually investment profit, but rather were simply the investment funds of later investors in the Ponzi scheme. The Receiver asserts that June knew, or should have known, that the benefits he derived from his investment in the Vavasseur Program were the proceeds of a fraudulent scheme. The defendant admits that beginning on or about November 1, 1999, the Robert F. June, Sr. Living Trust made very large investments in Vavasseur, but she maintains that June made all his Vavasseur investments in good faith and without any knowledge that Vavasseur was not a bona fide investment program. The defendant denies that June received fictitious "earnings" that were simply the invested funds of later investors. She does admit that June received a payment of approximately $500,000 in March 2001, representing the amount that he had invested in the Vavasseur program between November 1999 and February 2001.

## II. PARTIES' POSITIONS AND MAGISTRATE'S RECOMMENDATIONS ON CHOICE OF LAW

*Receiver's position*

In his motion for summary judgment, the Receiver first argues that his fraudulent conveyance claim against June is a state law claim over which this court has supplemental jurisdiction, the Receiver's claim being ancillary to the Securities and Exchange Commission's federal claims in the main case of *SEC v. Terry L. Dowdell, et al.,* Case No. 3:01CV00116 (W.D.Va.). Relying on classic *Erie* doctrine principles, the Receiver contends that a federal court deciding a state law claim must apply the conflict-of-law rules of the forum state.

*See Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding in a diversity case that federal courts must apply state law except in matters governed by the U.S. Constitution or federal statute); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that a federal court exercising diversity jurisdiction must apply state choice-of-law rules); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (finding that a federal court exercising supplemental jurisdiction must apply state law to state claims). According to the Receiver, Virginia applies the law of the place of the tort, or *lex loci delicti,* to tort claims.[4] The place of the tort is the location of the last event necessary to make an actor liable for a tort. *Quillen v. Int'l Playtex, Inc.,* 789 F.2d 1041, 1044 (4th Cir.1986). Here, the Receiver claims that the last act was the acceptance of the checks and wire transfers by June's bank in Michigan, and so the court should apply the Michigan law of fraudulent conveyance. Michigan has adopted the Uniform Fraudulent Transfer Act, codified at Mich. Stat. Ann. §§ 566.31—566.43.

Alternatively, the Receiver argues that this is an appropriate case for the application of federal common law. If the court were to adopt a federal rule of decision, the Receiver believes that it should choose to apply the Uniform Fraudulent Transfer Act, which has been adopted by over forty states.

*Defendant's position*

As a threshold matter, the defendant argues that no decision on the choice of law is required or appropriate, because there is no material difference between the fraudulent conveyance law of the forum state (Virginia) and the law of those states, including Michigan, which have adopted the UFTA.

Should the court reach the issue, the defendant argues that the court should apply federal choice-of-law rules to the Receiver's fraudulent conveyance claim.[5] In support of her position, the defendant contends that the court's jurisdiction in this case is based on federal question jurisdiction, that this is a federal securities case, and that the Receiver's authority is pursuant to federal statute. According to the defendant, federal choice-of-law rules, which follow the Restatement (Second) of Conflict of Laws, require the application of the law of the state with the most significant relationship to the occurrence and the parties, which in this case is Virginia. Alternatively, the defendant contends that even Virginia's choice-of-law rule (*lex loci delicti*) would lead to the application of the law of Virginia, not Michigan. Finally, the defendant states that there is no basis for applying the UFTA as federal common law.

*Report and Recommendation*

The Magistrate Judge recommends that this court apply federal choice-of-law rules. He points to *SEC v. Infinity Group Co.,* which applied federal choice-of-law rules to

---

**4.** Both parties agree with the Magistrate Judge that fraudulent conveyance is best treated as a tort for choice-of-law purposes.

**5.** As the defendant correctly points out, this is exactly the position taken by the Receiver in earlier related cases before this court. *See Terry v. Nona Marie Pierce,* Case No. 3:03CV00053, Receiver's Mem. of Points and Authorities in Support of Mot. for Summ. J.,

at 7; *Terry v. Timothy Pierce, et al.,* Case No. 3:03CV00046, Receiver's Mem. of Points and Authorities in Support of Mot. for Summ. J., at 6. In those cases, of course, the Receiver believed that federal choice-of-law rules pointed to the substantive law of Florida, a UFTA state. Both cases were resolved without the court having to determine the choice of law.

a similar fraudulent conveyance claim by a receiver (trustee) ancillary to a SEC civil enforcement action. 27 F.Supp.2d 559 (E.D.Pa.1998). In that case, the court found that the court had federal question jurisdiction over the trustee's claim. Here, although the magistrate believes that jurisdiction over the fraudulent conveyance claim is based on a "special brand of pendant jurisdiction," rather than federal question jurisdiction, he finds that *"Infinity Group* offers an attractive and reasoned rationale for applying federal choice-of-law rules to SEC enforcement actions in a way likely to bring a great deal of predictability and stability in this technological age where Ponzi schemes are orchestrated across state and international boundaries ...." (Rep. & Rec. at 2, 12.) The magistrate notes that the Receiver relied on *Infinity Group* when it asked this court to apply federal choice-of-law rules in the *Nona Pierce* and *Timothy Pierce* cases, although the Receiver now repudiates *Infinity Group*.

The Magistrate Judge also concludes that *Infinity Group*—which appears to stand alone—is consistent with the law of the Fourth Circuit. In the leading relevant case, the Fourth Circuit considered whether to apply federal or state choice-of-law rules to issues of property law that arose in a federal bankruptcy proceeding. *In re Merritt Dredging Co., Inc.*, 839 F.2d 203 (4th Cir.1988). Like the present receivership action under the securities laws, bankruptcy proceedings involve an overarching federal framework, but often incorporate traditionally state law matters. *Id.* at 205. The Fourth Circuit held that a federal bankruptcy court must apply state choice-of-law rules to determine the extent of a debtor's property interest, "in the absence of a compelling federal interest which dictates otherwise ...." *Id.* at 206. Here, the Magistrate Judge found that SEC enforcement actions do "implicate

such an overwhelming or compelling federal interest that courts ... should exercise independent federal judgment and resort to federal choice-of-law rules in an effort to discern the controlling substantive law." (Rep. & Rec. at 14.) Specifically, the Receiver's authority to pursue assets comes from the federal securities laws, and the purposes of those laws are furthered by a more uniform approach. Moreover, those assets may be widely scattered, making stability and predictability very beneficial. The *Infinity Group* approach provides uniformity and reduces the need to litigate choice-of-law issues in different jurisdictions.

The magistrate agrees that under federal choice-of-law rules, the court should use the law of the state with the most significant relationship to the dispute. The magistrate concludes that that state is Virginia, because Terry Dowdell operated his fraudulent investment scheme from Virginia during the relevant period, including the transfers to June. Therefore, the Magistrate Judge recommends that this court apply Virginia law to the Receiver's fraudulent conveyance claim.

In the event that this court decides to apply Virginia's choice-of-law rules, the Magistrate Judge recommends a finding that the court should use the substantive law of Michigan. Because the transfers to June were completed when they were accepted by June's bank in Michigan, Michigan is the state where the last act occurred for purposes of Virginia's *lex loci delicti* rule.

*Objections*

Both parties filed objections to the Magistrate Judge's recommendations. The Receiver argues that this is an ordinary case of supplemental jurisdiction, and the court should apply Virginia's choice-of-law rules to determine which state's laws apply

to the Receiver's state law claim. The Receiver finds no compelling federal interest or significant conflict to justify the use of a federal choice-of-law rule, and he believes that *Infinity Group* lacks analytical substance. Virginia's choice-of-law rules point to the substantive law of Michigan, a UFTA state. Alternatively, the Receiver argues that the application of federal choice-of-law rules also points to jurisdictions that have adopted the Uniform Fraudulent Transfer Act.

The defendant repeats her assertion that it is unnecessary to resolve the choice-of-law issue, because there is no material difference between the law of the forum state and that of any other jurisdiction. The defendant agrees with the recommendation that the court apply federal choice-of-law rules. In the event the court decides to apply Virginia's choice-of-law rules, the defendant disagrees with the magistrate's recommendation that those rules point to the application of Michigan's substantive law. According to the defendant, Virginia is the place of the tort, and its law of fraudulent conveyance would therefore apply to this case.

## III. CONCLUSIONS OF LAW

*Whether to make a choice*

■ The court must first address the defendant's contention that no decision on the choice of law is needed, because there is no material conflict between Virginia's fraudulent conveyance law and the law of those states which have adopted the UFTA. The defendant argues that there is no need to make a choice-of-law determination in such a situation, citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816, 105 S.Ct. 2965, 2976, 86 L.Ed.2d 628 (1985). However, that decision can be read to mean only that a *reviewing* court need not reverse a lower court's choice of law where the choice would not have made a difference. *Shutts* does not require that the district court always make an initial determination as to whether the choice of law would make a difference in a given case. District courts retain the discretion to determine the proper way to proceed.

This court believes that the most efficient and prudent course would be to resolve the choice-of-law issue first, as recommended by the Magistrate Judge, so that all parties know what law will apply to the Receiver's fraudulent conveyance claim. In any case, the court finds that the choice of law could make a difference here, although we will not know until the issues are addressed on the merits. Virginia law—which is not based on the UFTA—voids any conveyance made with "intent to delay, hinder, or defraud creditors," but exempts a "purchaser for valuable consideration, unless it appear that he had notice of the [fraud] ...." Va.Code Ann. § 55–80 (2003). Under the law of Michigan, which has adopted the UFTA, a debtor (such as Dowdell) may not transfer assets with "actual intent to hinder, delay, or defraud any creditor of the debtor." Mich. Comp. Laws § 566.34 (2004). The Michigan statute further provides that a transfer is not voidable against "a person who took in good faith and for a reasonably equivalent value ...." *Id.* at § 566–38(1). Thus, Virginia law and the UFTA would apply different language to the issue of whether Robert June, Sr. is entitled to retain the contested conveyances from Dowdell/Vavasseur. As the Receiver suggests, the case law interpreting these different statutes also could diverge. *See* Receiver's Rebuttal to Def.'s Objection to Receiver's Summ. J. Mot. at 2–4. In short, since the laws of the two jurisdictions are not identical on their face, the court prefers not to decide now whether these differences will affect the outcome of this case on its merits, but rather—as the

Magistrate Judge recommends—to choose first which law applies and then proceed to apply it.

*Choice of law*

Both the Magistrate Judge and the parties, for the most part, focus on the traditional two-step choice-of-law inquiry. First, the appropriate choice-of-law rule is determined. In this case, the dispute is whether to apply federal or Virginia choice-of-law rules. Second, the selected choice-of-law rule is applied to the facts of the case to determine the appropriate substantive law. Here, the choice is between Virginia's and Michigan's laws of fraudulent conveyance (Michigan's being a version of the UFTA). The court, however, declines to engage in the two-step choice-of-law analysis, because it finds that this is a case in which it is appropriate to apply substantive federal common law, according to the principles courts have used in determining when to use a federal rule of decision.

The basic rule since the Supreme Court's 1938 decision in *Erie v. Tompkins* is that a federal court is to apply state law, including state choice-of-law rules, to state law claims over which it exercises jurisdiction. Nevertheless, in the years following *Erie*, the Court made it clear that it had not meant to abolish federal common law. In *Clearfield Trust Co. v. United States*, the Court first held that the rights and duties of the United States on commercial paper which it issues are governed by federal common law. 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838 (1943). Although the Court could have then adopted state law as the applicable federal rule, it found it more appropriate to apply a federal common law rule, noting that transactions in commercial paper occur across state lines, and that application of state law would create uncertainty, leading to different results for identical transac-

tions. *Id.* at 367, 63 S.Ct. 573. In *United States v. Standard Oil Co.*, the Supreme Court noted that *Erie* had only thrown out federal common law as a substitute for state law in areas set apart for state control. 332 U.S. 301, 307, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). *Erie* did not bring under state law matters "so vitally affecting interests, powers and relations of the Federal Government as to require uniform national disposition rather than diversified state rulings." *Id.* Thus, if Congress had not dealt with a specific question relating to such matters, federal courts were free to fashion and apply federal common law rules. *Id.* See also *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n. 6, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (holding that federal common law is appropriate where there is an overriding federal interest or need for a uniform rule); *Atherton v. FDIC*, 519 U.S. 213, 225–26, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) (listing Supreme Court cases applying federal common law).

When an entity (such as a federal agency) performs federal functions under authority granted by federal statute, the duties and rights of that entity are to be determined by federal law. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Federal courts giving content to that law (in the absence of congressional direction) may either adopt state law as the federal common law rule or fashion a nationwide federal rule. *Id.* at 727–28, 99 S.Ct. 1448. A federal rule is preferred if: (1) there is a need for nationwide uniformity; (2) state law would frustrate the objectives of the federal program; and (3) use of a federal rule would not disrupt commercial relationships predicated on state law. *Id.* at 728–29, 99 S.Ct. 1448.

At the same time, the Supreme Court has emphasized that the cases calling for judicial creation of a federal rule are "few

and restricted," limited to instances where there is a "significant conflict" between federal interests and the application of state law. *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (citations omitted). In *O'Melveny,* the Court decided to apply state law to the question of whether a savings and loan's officers' knowledge of fraud could be imputed to the S & L, and consequently to the FDIC as the S & L's receiver. *Id.* at 85–89, 114 S.Ct. 2048. In a subsequent FDIC receiver case, the Court again applied state law to the FDIC's suit against the former officers of a bank, finding that there was no significant conflict. *Atherton v. FDIC,* 519 U.S. 213, 219, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997). Specifically, the Court found no need for uniformity and rejected the idea that courts must apply federal common law simply because banks are federally chartered. *Id.* at 219–21, 117 S.Ct. 666.

█ The court finds the present case to be one of those limited instances where the application of federal common law is appropriate, because there is a significant conflict between the federal interests involved and the application of state law. First, there is a strong need for uniformity in the treatment of the Receiver's various claims against those who allegedly received fraudulent transfers from the Dowdell fraud scheme. There is a federal interest in the consistent enforcement of the federal securities laws, in which the Receiver's asset recovery efforts play a significant role. The Receiver has represented—and the defendant has not disputed—that the scope of the fraud includes no fewer than 26 states and foreign countries. Of the many individuals around the world who made similar investments in the same investment program, and who received fictitious profits in return, it would be unfair and illogical to allow some of those inves-

tors to retain their profits while forcing others to disgorge theirs. Yet that is the possible result of applying the laws of different states and nations to the Receiver's various suits.

Second, the application of varying state and foreign laws could frustrate the objectives of the Receiver, which are federal in character, namely the protection of investors from the fraudulent sale of securities by recovering assets for distribution to the victim investors. The application of Virginia's fraudulent conveyance law could make the recovery of assets more difficult in this case, because it seems to set a higher bar than does the UFTA for setting aside fraudulent conveyances. *See Moore v. Gregory,* 146 Va. 504, 528–29, 131 S.E. 692, 699 (1925) (holding that a conveyance may be set aside only if the consideration is so gross that it shocks the conscience). Moreover, the lack of a nationwide common law rule could subject the Receiver to additional litigation over the proper law to apply in different cases. The Receiver's additional expenses would be paid from funds that would otherwise be returned to the fraud victims, hindering the federal interest in maximum compensation for the victims of securities fraud.

The need for uniformity and the objective of asset recovery, by themselves, may not be sufficient grounds for applying federal common law. *See O'Melveny,* 512 U.S. at 88, 114 S.Ct. 2048 (rejecting uniformity and "more money" arguments). This case, however, also involves securities regulation—an area governed by federal laws that are enforced in federal courts by a federal agency, the Securities and Exchange Commission. The Receiver here is performing federal functions. *See Kimbell,* 440 U.S. at 726, 99 S.Ct. 1448. He was appointed by a federal court; his powers are governed by the court order and by federal statutes. *See* Fed.R.Civ.P.

66, 28 U.S.C. §§ 754, 959(b), 1692. The Receiver's efforts are an integral adjunct to the SEC's enforcement of the federal securities laws.[6] The federal securities statutes confer upon district courts broad equitable powers to fashion appropriate remedies, including the appointment of a receiver, to effectuate the purposes of the securities laws. *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103–05 (2nd Cir.1972). The Magistrate Judge's order of July 12, 2002 authorizes the Receiver to take necessary measures, including the bringing of legal actions, to prevent the dissipation of any receivership assets. The collection of these assets for their eventual disbursement to the fraud victims is a federal interest, which the court finds to be in conflict with the potential application of diverse state (and foreign) laws.

The Eighth Circuit has dealt with this precise question. Because the court finds the Eighth Circuit's reasoning persuasive, it will quote from its decision at length:

At the outset we are confronted with the question of what law governs the issues in this case. The defendants strenuously insist that the law of Arkansas is applicable, without citing any authority. We find this proposition doubtful. Federal jurisdiction in this case is based, not on diversity of citizenship, but on a federal equity receivership arising from violation of the federal securities regulation statutes. The receiver was appointed in this case to prevent further violations of the federal securities laws and to preserve the assets for the benefit of the investor-creditors of the companies, who are primarily individual citizens of many different states and whose financial interests were endangered by

the securities law violations of the defendants. As Professor Loss points out, "surely this [an SEC receivership proceeding] is an instance of the post-Erie survival of a 'federal common law' (in this case, equity)." 3 L. Loss, Securities Regulation 1513 n. 113 (1961).

We find no cases directly in point on this issue, but an analogy may be drawn from the case of *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In that case, the F.D.I.C. brought suit on a note which it had acquired an asset from collateral for a loan made to a state bank. The defense of want of consideration was asserted, but the parties could not agree on which state law was to be applied to the transaction, it being alleged that under Missouri law the defense was proper, while under Illinois law the defendant would be estopped to deny liability on this ground. The Supreme Court held that the matter was not a question of state law, but of federal law. There were two reasons for this result. First, the corporation was an agency of the federal government and second, the policy underlying the Federal Reserve Act to protect the assets of public banks from misrepresentation required the questions presented to be determined by federal standards. Here the receiver, while not a federal corporation, is an officer of a federal court appointed because of violations of federal law. The policy underlying the federal Securities Act of 1933 is to protect investors from the fraudulent sale of securities and the common loss of investment which follows from violations of the act. In unsnarling the tangled affairs of these corporations to preserve insofar as possible assets for

---

**6.** In this case, Dowdell admitted to violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77(q)(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5.

distribution to the defrauded investors, the receiver is performing a federal function. These are substantial reasons for applying a federal rule of decision to this case.

*Bryan v. Bartlett,* 435 F.2d 28, 32–33 (8th Cir.1970). The court finds that the same analysis applies to the present case to justify the use of federal common law. *See also FDIC v. British–American Corporation,* 755 F.Supp. 1314, 1325 (E.D.N.C. 1991) (applying federal common law to fraudulent conveyance actions brought by a federal receiver in a case involving a Ponzi-like scheme).

An additional note on the Eighth Circuit's reference to *D'Oench v. FDIC* is in order. Some courts have found that in *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) and *Atherton v. FDIC,* 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997), the Supreme Court effectively abrogated the federal common law "*D'Oench* doctrine," under which parties are barred from raising certain defenses against the FDIC as receiver. *See FDIC v. Deglau,* 207 F.3d 153, 170–71 (3rd Cir.2000). Those Supreme Court holdings were based on a finding that the 1989 Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101–73, 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(9)(A), 1823(e)(1), was a comprehensive federal statute that covered the rights and privileges of the FDIC as receiver, and it had therefore superseded the common law *D'Oench* doctrine. *See Murphy v. FDIC,* 61 F.3d 34, 38–39 (D.C.Cir.1995). Unlike FIRREA, however, the federal securities statutes do not cover the rights and privileges of SEC receivers like the one here, leaving room for common law rules. Thus, the pre-*O'Melveny* FDIC cases still provide analogical precedent for applying federal common law in this case.

## Federal common law rule

█ Now that this court has decided that it would be appropriate to apply a federal rule of decision to the Receiver's claim, it must next determine the content of that rule. The court agrees with the Receiver's suggestion that it adopt the Uniform Fraudulent Transfer Act as the federal common law rule. Unif. Fraudulent Transfer Act (1984). "The use of a uniform statute as federal common law is often appropriate." *British–American Corporation,* 755 F.Supp. at 1325. Courts have used the UFTA's predecessor, the Uniform Fraudulent Conveyance Act, as federal common law. *Id.* In applying the UFCA, the court in *British–American Corporation* noted—as partial justification—that it had been adopted in twenty-four states at that time. The UFTA has now been adopted in at least forty-two states and the District of Columbia, and therefore represents a national standard, as the Receiver states. *See* Unif. Fraudulent Transfer Act, Refs & Annos (West 2004) (current through 2003 Annual Meeting of the National Conference of Commissioners on Uniform State Laws). The court will therefore grant Section VI of the Receiver's summary judgment motion to the extent that it requests the application of the Uniform Fraudulent Transfer Act as federal common law.

An appropriate order shall this day issue.

## ORDER

Before the court is the Magistrate Judge's December 14, 2004 Report and Recommendation on the plaintiffs' July 2, 2004 Motions for Partial Summary Judgment. For the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED, ORDERED,
AND DECREED

as follows:

1.  The court declines to adopt the Magistrate Judge's Report and Recommendation, filed on December 14, 2004;

2.  Both parties' objections to the Report and Recommendation are hereby OVERRULED;

3.  Section VI of the plaintiffs' Motions for Partial Summary Judgment, filed on July 2, 2004, is hereby GRANTED in part, to the extent that it requests the application of federal common law, in the form of the Uniform Fraudulent Transfer Act, to the plaintiffs' fraudulent conveyance claim;

4.  The Uniform Fraudulent Transfer Act shall apply to the plaintiffs' claim for fraudulent conveyance.

5.  The court makes no findings with respect to Sections I through V of the plaintiffs' Motions for Partial Summary Judgment, pursuant to the Magistrate Judge's July 9, 2004 order staying proceedings with respect to all issues other than the choice of law.

The Clerk of the Court is hereby directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record.